IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| AMANDA L. ZAHN, | CV 23–65–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| FLATHEAD COUNTY, JEFFREY J. PERRY, TRAVIS SMITH, and DOES I–X, | |
| Defendants. | |

Before the Court is Defendant Flathead County's Motion to Dismiss.  (Doc.
6.)  Flathead County moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to
state a claim for which relief may be granted.  For the reasons discussed below, the
Court grants the motion and dismisses the claims against Defendant Flathead
County without prejudice.

## BACKGROUND

Plaintiff Amanda Zahn barricaded herself in a camp trailer on May 26, 2021,
after her partner, Donald Schwindt, became confrontational towards her.  (Doc. 10
¶¶ 13–16.)  Once inside, Zahn retrieved a pistol and fired a shot into the ground to
dissuade Schwindt from forcibly entering the trailer.  (*Id.* ¶¶ 16–17.)  The couple's
confrontation and Zahn's warning shot caused others in the area to call 911.  (*Id.* ¶

18.)

When representatives of the Flathead County Sheriff's Office ("FCSO") arrived at the scene, Zahn was still armed with the pistol and barricaded inside the trailer. (*Id.* ¶ 19.)  Members of various law enforcement agencies attempted to diffuse the standoff and discovered Zahn was having a mental health crisis and having suicidal thoughts. (*Id.* ¶¶ 21–23.)  Negotiations with Zahn lasted about an hour until the Flathead County Special Response Team ("SRT") arrived at the scene with a Mine-Resistant Ambush Protected ("MRAP") vehicle, an assault vehicle the SRT positioned adjacent to the camp trailer. (*Id.* ¶¶ 24–27.)

Zahn heard the MRAP approach and, still holding the pistol, went to the doorway of the camp trailer. (*Id.* ¶¶ 30–31.)  At no point did Zahn aim the pistol at nor threaten harm against a law enforcement officer. (*Id.* ¶ 31.)  When Defendant Perry—a Flathead County SRT member riding in the MRAP—saw Zahn he fired his AR-15 rifle at her. (*Id.* ¶ 33.)  Before opening fire, Defendant Perry did not issue a warning, nor instruct Zahn to drop her weapon. (*Id.*)  Defendant Smith— another Flathead County SRT member riding in the MRAP—then fired two shots at Zahn from his AR-15 rifle. (*Id.* at ¶ 34.)  Two bullets struck Zahn, one of which injured her spinal cord. (*Id.* at ¶¶ 35–37.)  Zahn's pistol discharged involuntarily inside the camp trailer after Zahn was shot. (*Id.* ¶ 38.)

In the next 5–6 hours, law enforcement officers used two forms of CS Gas to

force Zahn to exit the trailer.  (*Id.* ¶¶ 39–43.)  Though not defined in the First Amended Complaint ("FAC"), "CS Gas" is a riot control agent commonly known as tear gas.  CDC, *Facts About Riot Control Agents Interim Document* (Apr. 4, 2018).  Officers observed Zahn using a drone camera, which showed Zahn "naked, bloody, and writhing in pain on the floor of the camper."  (*Id.* ¶ 40.)  Officers only rendered medical care to Zahn hours after observing her bleeding on the floor of the camper and discharging CS gas to instigate her exit.  (*Id.* ¶ 46.)  Eventually, officers roughly dragged Zahn from the camper.  (*Id.* ¶¶ 47–48.)

Zahn subsequently brought the instant action against Defendants Flathead County, Smith, Perry, and Does I–X.  (*Id.* at 1.)  Zahn claims Defendants Smith and Perry violated her constitutional rights under the Fourth, Eighth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983.  (*Id.* ¶¶ 50–55.)  Zahn specifically alleges Defendants Smith and Perry violated her constitutional rights to be free from unreasonable seizure, free from excessive and unreasonable force, and her right to receive medical treatment.  (*Id.* ¶ 51.)

Zahn also asserts a *Monell* claim as well as negligence, assault, and battery claims against Defendant Flathead County. [1]  (*Id.* ¶¶ 56–92.)  Zahn argues Flathead County "failed to properly screen, retain, review, train, instruct, monitor, supervise,

---

[1] The term "*Monell* claim" stems from *Monell v. Department of Social Services* where the United States Supreme Court held that a municipality is a person under 42 U.S.C. § 1983 and therefore liable for compensatory damages and declaratory and injunctive relief.  436 U.S. 658, 690 (1978).

evaluate, investigate, and discipline its officers," which gives rise to the County's liability under *Monell*.  (*Id.* ¶¶ 58, 71.)

Defendant Flathead County has moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief may be granted. (Doc. 7 at 2.)  Defendant Flathead County argues that the FAC fails to state that the County had an unconstitutional policy, that the FAC contains insufficient factual allegations to state a failure to train claim, and that a deficient *Monell* claim should not proceed beyond a motion to dismiss with distinct state law tort claims. (Doc. 13 at 4–10.)

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* The plausibility standard on a motion to dismiss is more stringent than mere possibility, but less stringent than a probability standard.  *Id.*  Courts must draw on judicial experience and common sense when evaluating the plausibility of a complaint's allegations.  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014)

(internal citation omitted.)

Dismissal is appropriate "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal quotation marks omitted). "In general, the [Rule 12(b)(6)] inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (internal citation omitted). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

### DISCUSSION

### I.   *Monell* Claim

Under 28 U.S.C. § 1983, "[e]very person who, under color of any statute . . . custom, or usage of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction of [the United States] to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party in an action at law." The Supreme Court's decision in *Monell v. Dep't of Soc. Sec. of N.Y.* established that the term "persons" in § 1983 encompasses municipalities, meaning local governing bodies can be sued for causing a constitutional deprivation. 436 U.S. 658, 690 (1978). However, "a

municipality cannot be held liable under § 1983 *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691.  Thus, municipalities "can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. 658).

In order to establish municipal liability under § 1983, a plaintiff must prove: "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).  A "policy" under the second element of a *Monell* claim "can include written policies, unwritten customs and practices, [and] failure to train municipal employees on avoiding certain obvious constitutional violations." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (citing *City of Canton*, 489 U.S. at 387).

In the *Monell* context, an unwritten custom or practice must be "longstanding" enough to "constitute[] the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). "[E]vidence of repeated constitutional violations for which the errant municipal

officers were not discharged or reprimanded" offers proof of a municipality's unwritten custom or policy.  *Gillette*, 979 F.2d 1342, 1349 (9th Cir. 1992).  "[G]eneral evidence of departmental treatment of complaints and the use of force can 'support[] the [plaintiff's] theory that . . . disciplinary and complaint processes . . . contributed to the police excesses complained of because the procedures made clear to [the] officer that [he] could get away with anything.'"  *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1027 (9th Cir. 2015) (quoting *Larez v. City of Los Angeles*, 945 F.2d 630, 646–47 (9th Cir. 1991)).

If a plaintiff sufficiently alleges a municipal policy, the policy must still constitute deliberate indifference to the plaintiff's constitutional rights.  *Dougherty* 654 F.3d at 900 (internal citation omitted).  Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).  When "facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens" the deliberate indifference standard is satisfied.  *City of Canton*, 489 U.S. at 396.  However, "evidence of the failure to train a single officer is insufficient to establish a municipality's deliberate policy."  *Blankenhorn v. City of Orange*, 485 F.3d 463,

7

484 (9th Cir. 2007).

The same deliberate indifference standard applies when a Plaintiff alleges a failure to train.  "Failure to train may amount to a policy of 'deliberate indifference,' if the need to train was so obvious and the failure to do so made a violation of constitutional rights likely."  *Dougherty*, 654 F.3d at 900 (citing *City of Canton*, 489 U.S. at 390).  The need to train is obvious when municipal policymakers have "actual or constructive notice that a particular omission in [their] training program causes [municipal] employees to violate citizens' constitutional rights."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Id.*  Further, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."  *Id.* at 62–63 (quoting *Bd. of the Cnty. Comm'rs*, 520 U.S. at 409).

Additionally, a municipality's failure to adequately screen an applicant's background can, at least in theory, meet the deliberate indifference standard and provide the basis for *Monell* liability.  If it is "plainly obvious" to a municipal policymaker that the hiring of an inadequately screened applicant will result in the deprivation of a third party's constitutional rights, then the deliberate indifference standard is met.  *Bd. of the Cnty. Comm'rs*, 520 U.S. at 411.  When alleging a

8

failure to screen theory of *Monell* liability, the plaintiff must also show that "[t]he connection between the background of the particular applicant and the specific constitutional violation alleged [is] strong." *Id.* at 412.

Finally, municipal liability under § 1983 only attaches if the Plaintiff proves "a direct causal link between a municipal policy or custom and the alleged constitutional violation." *City of Canton*, 489 U.S. at 385. "The custom or policy must be a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1075 (9th Cir. 2016) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion)).

Zahn argues that Flathead County is liable under *Monell* for failures to "properly screen, retain, review, train, instruct, monitor, supervise, evaluate, investigate, and discipline its officers." (Doc. 10 ¶ 58.) Fundamentally, Zahn advances three theories of *Monell* liability against Flathead County. First, Zahn argues that Flathead County's failure to properly screen its officers led to the deprivation of Zahn's constitutional rights. (*Id.* ¶¶ 58–60.) Second, Zahn alleges that Flathead County has an unwritten custom or policy of failing to reprimand and adequately supervise officers involved in constitutional violations. (Doc. 10 ¶¶ 57–70.) Third, Zahn alleges that Flathead County failed to properly train officers

involved in constitutional violations, especially after officer-involved shootings (*Id.*)  The Court finds that Zahn's Complaint alleges insufficient facts to state a claim under all three theories of *Monell* liability.

### A. Inadequate Screening

Zahn's allegations concerning Flathead County's inadequate screening of officers are deficient and fail to state a *Monell* claim.  The FAC contains only conclusory allegations that Flathead County inadequately screened officers and that this failure led to the deprivation of Zahn's constitutional rights.  (*See id.* ¶¶ 58, 60, 70.)  For example, Zahn offers no factual allegations that Flathead County inadequately screened Officer Smith and Perry, or that the officers had criminal backgrounds that would make it highly likely that they would use excessive force. Without any factual allegations concerning the officers' backgrounds, "the connection between the background of the particular applicant and the specific constitutional violation alleged" is weak.  *Bryan Cnty.*, 520 U.S. at 412.

Without more, Zahn's inadequate screening allegations are exactly the sort of "'naked assertions' devoid of 'further factual enhancement'" that render a complaint insufficient to survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Thus, the Court finds Zahn did not state a plausible claim for relief due to Flathead County's failure to adequately screen its

10

officers.

## B. Failure to Reprimand

Next, Zahn alleges that Flathead County has a custom or unwritten policy of failing to reprimand law enforcement officers involved in constitutional violations. (Doc. 10 ¶¶ 59–60.)  Specifically, Zahn alleges that Flathead County failed to reprimand officers for their involvement in four fatal shootings prior to the shooting at issue here.  (Doc. 10 ¶¶ 68–70.)  In response, Flathead County argues that Zahn does not allege that these prior shootings were constitutional violations, nor demonstrate how the prior shootings arose from an unconstitutional policy or custom.  (Doc. 13 at 6.)  At this stage, the Court finds Zahn alleges insufficient facts to plausibly state a claim for *Monell* liability under the failure to reprimand rubric.

Most importantly, Zahn omits factual allegations to suggest that the four prior shootings were constitutional violations.  According to the FAC, Flathead County law enforcement officers were involved in four fatal shootings in the year before officers shot Zahn.  (Doc. 10 ¶ 63.)  Additionally, the FAC alleges that Deputy Smith—who shot Zahn—also shot and killed Anthony Grove in 2020.  (*Id.* ¶ 62.)  Then, the FAC alleges that Flathead County failed to reprimand officers involved in these shootings, which led to both Zahn's shooting and others.  (*Id.* ¶¶

70–71.)

Crucially, Zahn does not allege that the prior shootings were "repeated constitutional violations for which . . . errant municipal officers were not discharged or reprimanded," which could plausibly plead an unwritten custom of using excessive force among sheriffs in Flathead County. *Gillette*, 979 F.2d at 1349. To successfully allege a failure to reprimand claim, plaintiffs can also use "general evidence of departmental treatment of complaints and the use of force." *Velazquez*, 793 F.3d at 1027. However, Zahn makes no factual allegations about Flathead County Sheriff's Office's treatment of complaints. Instead, Zahn merely alleges that Flathead County failed to reprimand officers for the four prior shootings, without alleging that the shootings amounted to constitutional deprivations or constituted excessive force. (Doc. 10 ¶¶ 63, 70–71.) Therefore, the Court dismisses the failure to reprimand claim without prejudice.

### C. Failure to Train

Zahn's failure to train claim relies on the same factual allegations offered in support of her failure to reprimand theory. (*See id.* ¶¶ 60–63, 68–70.) As additional support, Zahn submits the training records for Officers Smith and Perry. (Docs. 1-5, 1-6.) In essence, Zahn's failure to train claim is that Flathead County failed to provide additional training to officers after their involvement in both

Zahn's shooting and the previous four shootings. (*Id.* ¶¶ 68–70.)

However, Zahn's failure to train claim is deficient for the same reason as her failure to reprimand claim: Zahn does not allege that the prior shootings were similar constitutional violations to Zahn's shooting. When asserting a failure to train *Monell* claim, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference." *Connick*, 563 U.S. at 62. Municipal policymakers may be deliberately indifferent when, "on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," they choose to retain the program nonetheless. *Id.* at 61. Further, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.*

Zahn's Complaint lacks factual allegations to indicate that the prior shootings were constitutional deprivations and omits any facts suggesting similarity between the incidents. Absent these factual allegations, Flathead County could not have been on actual or constructive notice of an omission in the County's training program. Zahn does allege a program-wide deficiency in training— specifically that numerous officers involved in at least five separate shootings received inadequate training. But the FAC is missing critical factual allegations to suggest that these shootings violated citizens' constitutional rights.

13

Since Zahn does not allege that the prior shootings were also constitutional violations, Zahn functionally asks the Court to infer an inadequate training policy from a single incident, which the Court cannot do. *See Hyde v. City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022) ("While deliberate indifference can be inferred from a single incident when 'the unconstitutional consequences of failing to train' are 'patently obvious' an inadequate training policy itself cannot be inferred from a single incident" (internal citation omitted)).  Thus, the Court dismisses the failure to train *Monell* claim without prejudice.

## II.     State Law Claims

Zahn also brings state common law claims of negligence, assault, and battery against Defendant Flathead County.  This Court may exercise supplemental jurisdiction over the state law claims because they form the same case or controversy as the *Monell* claim over which this Court has original jurisdiction.  28 U.S.C. § 1367(a).  When a district court "has dismissed all claims over which it has original jurisdiction," then the court may decline to exercise supplemental jurisdiction over the remaining state law claims.  *Id.* § 1367(c)(3).  When a district court dismisses the federal claims before trial, the balance of pendent jurisdiction factors weighs in favor of dismissing the remaining state law claims, though dismissal is not mandatory.  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  Because the Court dismisses the *Monell* claim without prejudice, the

Court declines to exercise supplemental jurisdiction over the state law claims and dismisses these claims without prejudice.

### III.   Leave to Amend

The Court grants Zahn leave to amend the Complaint because "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).  Here, additional factual allegations could cure Zahn's Complaint.  Specifically, Zahn could plead additional facts to allege that the prior shootings violated citizens' constitutional rights, meaning that amendment here is not futile.

**CONCLUSION**

Because Zahn does not submit facts alleging a pattern of constitutional violations, Zahn cannot state inadequate screening, failure to train, or failure to reprimand theories of *Monell* liability.  Because amendment would not be futile, the Court dismisses this matter without prejudice and grants Zahn leave to amend.

Accordingly, IT IS ORDERED that Defendant Flathead County's Motion to Dismiss (Doc. 6) is GRANTED.  Zahn's claims against Flathead County are DISMISSED WITHOUT PREJUDICE.

15

DATED this 1st day of April, 2024.

Dana L. Christensen, District Judge
United States District Court